MANSFIELD, Justice (dissenting).
I respectfully dissent. The issue is whether Draught House 50
sold and served any beer, wine, or intoxicating liquor to [Michelle Campbell] when the licensee or permittee knew or should have known the person was intoxicated, or ... sold to and served [Campbell] to a point where the licensee or permittee knew or should have known the person would become intoxicated.
See Iowa Code § 123.92(1)(a ) (2015).
The majority opinion creates, in effect, an inference of negligence whenever a patron leaves a licensee or permittee in an intoxicated condition. This isn't what the statute says, and it isn't what Smith v. Shagnasty's, Inc. says. See 688 N.W.2d 67 (Iowa 2004).
In Smith , the plaintiff was struck on the head with a beer bottle by an intoxicated assailant while visiting a bar. Id . at 70. She had recently had a hostile encounter with the assailant in the bar's restroom. Id . Upon leaving the restroom, the plaintiff and her companion found the assailant waiting, "muttering something unintelligible under her breath and holding a beer bottle in her hand." Id . The assailant had *553 "acquired [the beer bottle] after leaving the restroom." Id . The assailant was a "loudmouth" and the plaintiff and her companion both concluded she was intoxicated. Id . The assailant hit the plaintiff in the face with the beer bottle, slicing up her face. Id . In the ensuing struggle, the plaintiff managed to get hold of the assailant by the hair. Id . Bar bouncers intervened. Id . The plaintiff agreed to let go of the assailant only after the bouncers promised to detain her until police arrived. Id . at 70-71. But the bouncers broke their word and let the Jane Doe assailant "slip into the night." Id . at 71.
We held that these particular facts were enough for the plaintiff to get her case to the jury. We said,
We recognize that such a "subsequent intoxicated condition inference" might not be appropriate in every case, but in this case the inference is warranted because of the presumably short timeframe between service and the attack: for at the time of the attack, Doe was still in the bar, holding a beer, in a visibly intoxicated state. In this case, the inference tends to show that when Shagnasty's sold and served Doe the beer in question, Shagnasty's knew or should have known she (1) was already intoxicated or (2) would become intoxicated.
Id . at 75.
We then devoted a separate paragraph of the opinion to "the evidence in the record that tends to show Shagnasty's intentionally let Doe abscond after agreeing to hold her." Id . We concluded,
In sum, we hold that two inferences, taken together, lead us to the conclusion that a reasonable jury could find a genuine issue of material fact on the scienter requirement of Smith's dramshop claim. The first inference arises from Doe's intoxicated condition shortly after the presumed time of service, the second from the bouncers actions that resulted in Doe's unknown identity. Summary judgment on the issue of scienter was not proper.
Id . at 76.
Even accepting that Smith would have come out the same way without the bar having suspiciously let the intoxicated assailant get away, the facts here are quite different. There is no evidence that Michelle Campbell was seen conspicuously intoxicated in Draught House 50 right after having been served a beer.
Campbell and six others were sitting at a table when they were served on a Friday late afternoon following work. While it is certainly fair to require a tavern to pay attention to the amount of alcohol it is serving to a particular customer, it's entirely possible that Campbell was drinking beverages not ordered by or for herself. And just because a trained police officer observed signs of intoxication after Campbell was involved in a car accident, that does not mean Campbell would have appeared noticeably intoxicated to a server while part of a group at a table.
The fact-specific nature of these dramshop cases explains why we declined to establish a blanket inference of negligence based on intoxication in Smith , and also why we should decline to do so today. For example, I might agree that the present record would be enough to get to the jury if Campbell had been ordering and drinking alcoholic beverages by herself at the bar, like Rick in Casablanca ,[6] regardless of the amount Campbell claimed to have consumed. But by establishing a blanket inference, the majority routinely sends to the jury all cases where the patron was intoxicated on leaving the establishment, regardless of their facts. Whether the patron was part of a group singing "Die Wacht *554 am Rhein" obnoxiously, singing "La Marseillaise" patriotically, or just behaving quietly, negligence is inferred.
Further factual development was far from an insurmountable task here. The plaintiff could have served interrogatories on Draught House 50 or taken additional depositions. Today, unlike in the days of Rick's Café, credit cards are frequently used. (Although it remains true, as Rick would say, "Your cash is good at the bar.") Campbell identified by name everyone seated at her table. The plaintiff could have served a document request on Draught House 50 for any receipts for those individuals. That alone might have shown that more rounds were served than the three rounds claimed by Campbell.
Courts have to deal with human nature. The customer will tend to understate the amount of alcohol she or he consumed and the server will tend to remember that the customer looked fine. Even without knowing the size of the bottles or Campbell's body weight, there is reason to doubt her claim that she consumed only three bottles of beer, spaced out over a four-hour time period. But this court's response should not be to modify our precedent and adopt an overbroad blanket inference of negligence from intoxication. Rather, we should insist on further factual development concerning the actual circumstances within the establishment that served the alcoholic beverages, such as occurred in Smith and the out-of-state cases relied on by the majority.
For the foregoing reasons, I would affirm the judgment of the district court and the decision of the court of appeals.
Waterman and Zager, JJ., join this dissent.

Casablanca (Warner Bros. 1942).